## TRULOCK *et al. v.* TAYLOR, *Adm'r.*

EJECTMENT—*Swamp and overflowed lands.*—An entry of lands with the register of the United States land office, in accordance with the law authorizing him to act, and the receipt of the purchase money by the proper officer, although no patent be issued, *vests* such title and legal interest, as enables the purchaser to maintain ejectment; and a subsequent grant by the United States, of such land, under an act entitled "An act to enable the State of Arkansas, and other States, to reclaim the swamp lands within their limits, approved September 28, A. D. 1850, conveys no right or title, as against the original purchaser, from the United States to the State, or its vendees, further than a naked legal title in trust for the party holding the prior and more equitable title.

PLEADING—*Practice.*—Where, under the Code of Practice, an equitable defense may be made to a suit at law, and the case is not transferred to the equitable side of the docket, the issue made on such defense is not to be disregarded, and such issue must be disposed of by the court according to the principles involved, either of law or equity.

EQUITABLE TITLE—*When pleaded*—An equitable title, in an action on a United States land patent, can be pleaded in a State court, when permitted by the law of the State.

PLEAS—*Election of*—Parties can only be required to elect between pleas presenting the same issue *and both well pleaded.*

*Appeal from Jefferson Circuit Court.*

HON. HENRY B. MORSE, Circuit Judge.

*Watkins & Rose,* for appellants.

We submit:

1. Action is barred by Statute of Limitation. *Gould's Dig. p. 462, sec. 22. Ib. p. 739, sec. 2.*

2. Suit of 1862 is a nullity. *Const. 1868, art. 1, sec. 25.*

3. Refusal to allow first plea reinstated, was error.

4. Refusal to declare law propositions of appellants, was error.

As to third proposition, see *Cowper, 473.*

There was nothing *dubious* in appellant's *equity.* *2 Johnson's*

*cases,* 321. See also, *3 Wheat.* *221; 2 Wend.* *109; Angel on Lim. sec. 327; 7 Wallace, 386.*

5. The second suit was not a continuation of the former one. *8 Cranch, 84; 22 Texas, 93.*

*Bell & Carlton,* for appellee.

The ruling of the court requiring appellant to elect between 1, 3 and 4 pleas, was right. *Davis v. Calvert, 17 Ark. 85; Spencer v. McDonald, 22 Ark. 466; Sumpter v. Tucker, 14 Ark. 186.* Plaintiff had a right to demur after motion to elect was disposed of. *Davis v. Calvert, 17 Ark. 85.*

The propositions of law asked by defendants, were clearly erroneous. As to the first, see *Thorington v. Smith & Harly 8 Wallace; Hawkins v. Filkins, 24 Ark. 288.* The *second* was based upon the idea that time runs against the government.

The *third* proposition is, that defendant's equitable title, based upon a pre-emption float, that had never been confirmed by the United States, will prevail in this action of ejectment over the plaintiff's legal title. See *Campbell v. Garvin, 5 Ark; Hooper v. Scheimer, 23 Howard, 249.* We submit there was no error in the ruling of the court below.

WARWICK, Special J.

At the May term, 1862, of the circuit court of Jefferson county, Creed Taylor, administrator of the estate of Solon B. Jones, deceased, brought action of ejectment against Amanda Trulock, *et al.*, to recover possession of eighty acres of land in Jefferson county. Summons was issued and the defendants served, but no other proceedings appear to have been had in this case.

At the May term, 1866, said Creed Taylor, administrator, etc., instituted a new suit, to recover possession of said land, against Amanda Trulock, *et al.*, alleging in the declaration that Solon B. Jones, his intestate, was, on the first day of Jan-

uary, 1861, *in possession* of the lands sought to be recovered, and that, by *virtue of such possession*, he, Creed Taylor, as administrator, became entitled to the possession of said premises on the first day of January, 1866, and that *afterwards,* to wit: on the first day of February, 1866, Amanda Trulock, *et al.*, entered, etc.

At the fall term, 1866, on motion of Taylor, the first suit was dismissed. At the fall term, 1867, the appellants filed four pleas: *First.* Not guilty. *Second.* Statute of limitations. *Third.* Possession since the 27th April 1836, under right and title derived from the United States, by virtue of an entry and purchase thereof, on that day made, of the register and receiver of the United States district land office, located at Little Rock, Arkansas, and authorized by law so to sell the same, and so continuously have been in such actual, peaceable, uninterrupted, adverse possession and occupation to the present time. *Fourth.* Possession under Barraque, (who entered) and assignees, as in third plea. That appellee claims title thereto, and right of possession, by virtue of a purchase made by his intestate, Solon B. Jones, in the year 1856, of the State of Arkansas, claiming the same under an "Act (of Congress) to enable the State of Arkansas, and other States, to reclaim the swamp lands within their limits;" approved September 28, A. D. 1850; that the land in controversy was not, at the time of the passage of the act of Congress, and has not been since, swamp or overflowed land, and that the selection and confirmation thereof, as a part of the grant inuring to the State of Arkansas, was and is a mistake, and a fraud upon said act.

On motion of the appellee, the appellants were required, by the court, to elect between their first and fourth pleas, and they elected to stand upon the fourth.

The appellee then demurred to the fourth plea, which demurrer was sustained by the court. Whereupon the appellants moved the court for leave to reinstate their first plea, which motion was overruled by the court.

At the May term, 1869, this cause was submitted to the

court, sitting as a jury, on the following written agreed statement:

"For the trial and determination of the issues joined in this cause, and now submitted to the court as a jury, and for the purpose of such trial, the said parties, by their respective attorneys, agree that the facts are as follows: The tract of land described in the delaration was located with an eighty acre pre-emption float, under the act of Congress of 29th of May, 1830, by Antoine Barraque, at the United States land office, at Little Rock, on the 27th of April, 1836, *and the purchase money thereof* ($100) *paid by him* to the receiver of said land office, but no patent has ever been issued on said entry.

"On the 12th day of December, 1843, said Barraque and wife made a deed of trust, of and upon said land, to Frederick Notrebe and William B. Wait, to secure the payment of certain debts owing by him.

"On the 21st day of February, 1845, said trustees, Notrebe and Wait, sold said land, under and in pursuance of said deed of trust, when the same was purchased by James H. Trulock, the husband of said Amanda, father of said other defendants, and conveyed to him, by deed of said trustees, and he entered into possession thereupon, and cleared the same, and it has ever since then been in cultivation; and under and by virtue of such purchase, at said trustees' sale, said tract of land has been in possession of the said James H. Trulock, and of the said defendants, succeeding and claiming under him, ever since the 21st day of February, 1845, and down to the present time; and this paragraph includes the fact that said defendants were in possession of said land at the time of the institution of this suit, and of any former suit for said land. So far, such fact may be relied on by said plaintiff.

"Said Antoine Barraque and James H. Trulock are both dead, and both died in or prior to the year 1848.

"Ever since said James H. Trulock purchased said land at said trustees' sale, he and said defendants, claiming under him, have been in the actual possession of said land, openly and no-

toriously claiming the same as owners, and using and cultivating the same.

"Said tract of land has never been overflowed, so far as known to any person now living, and was not at the time of the passage of the act of Congress of the United States entitled 'An act to enable the State of Arkansas, and other States, to reclaim the swamp lands within their limits,' approved September 28, 1850, and has not since been swamp or overflowed land, or in any way made unfit thereby for cultivation.

"Said tract of land was selected, by the agents of the State of Arkansas, as part of the swamp lands in said State, under and by virtue of said act of Congress, and on the 9th day of August, 1855, the intestate; Solon B. Jones, entered and purchased the same at the State swamp land office, at Pine Bluff.

"Such selection was confirmed by the commissioner of the general land office, at Washington City, and the same, along with other lands so selected, were patented to said State; and said tract of land was conveyed by the Governor of said State, pursuant to such entry, to Solon B. Jones, by deed, on and bearing date January 14, 1858.

"On the 10th day of February, 1862, said plaintiff instituted an action of ejectment for said lands against the defendants thereto. The declaration and writ in that suit, on file in the office of the clerk of this court, and indorsements thereon, as the same appears of record, are here referred to and made part hereof, the same as if here inserted at full length.

"On the 19th of March, 1866, said plaintiff, on account of the supposed loss of said papers, instituted this suit, and on the 3d day of December, 1866, dismissed the said former suit.

"And upon the foregoing facts this case is submitted to the court, sitting as a jury, upon the issues joined herein, with leave to either party to except to any rulings of the court, upon any propositions of law that may be moved by either as applicable to this case, and take a bill of exceptions in respect thereof." Signed by attorneys for both parties.

The court below gave judgment of possession to the appellee, Creed Taylor, administrator, etc., and damages against the appellants, Amanda Trulock, *et al.*, in the sum of $2,690, from which they appeal.

The Code of Practice for this State went into and took effect on the first day of January, 1869, by its own provisions, and has been in full force and effect from that date, so far as it gave or created any new or substantial right.   The act of the Legislature, approved April 12, 1869, entitled, "An act to legalize the practice and proceedings of the courts of this State from January 1, to June 1, 1869," in no manner postponed the time of its taking effect, but merely extended to the pleader the privilege or option to plead under the former practice, or under the Code, until the first of June, 1869, after which time all pleadings were required to conform to the Code.

Under the Code of Practice, a defendant may, in his answer, in action to recover the possession of land, set up and rely upon an equitable defense.   See *section 116, Code of Civil Practice.*   This was a substantial right enjoyed by the defendants in the court below, at the time of the trial of this cause, viz: at the May term, 1869, of the Jefferson circuit court.   Where an equitable defense is set up to a proceeding at law, either party may have the case transferred to the equity side of the docket ; but if this be not done, the issue made on such defense is not to be disregarded, and such issue must be disposed of by the court according to the principles involved, either of law or equity.   *Petty v. Maher, et al., 15 B. Mon 604.*   The right of a defendant to plead an equitable title, in an action on a United States land patent, in a State court, when permitted by the law of the State, was definitely settled in the Supreme Court of the United States, in the case of *O'Brien v. Perry, 1 Black, (U. S.,) 132.*   This was a case similar to the one now under consideration, in which the right was maintained by the Supreme Court of Missouri, and an appeal was affirmed.

In this' case the appellee claims title and possession through

a purchase from the State of Arkansas, she acquiring title by a grant from the United States, as swamp and overflowed lands, and received a patent from the general government for the same. The appellant claims under and by virtue of an entry made with a pre-emption float, at the United States land office, on the 27th of April, 1836, and for which the United States, or her representatives received the purchase money, for which a certificate of entry was given, but no patent has been issued thereon.

Various questions of pleading, practice and limitations are presented to the court, none of which, however, with our views, being necessary to the determination of this cause, we pass them, and proceed to the main inquiry, viz: Does the third plea of the appellant, taken in connection with the agreed state of facts, present a sufficient legal or equitable defense to defeat the appellee's claim? For, as we have before stated, the appellant could rely on an equitable as well as legal defense, under the Code of procedure of this State.

It is admitted by counsel for the appellee, that all the facts set forth in the agreed statement could be given in evidence, under the first and third pleas of the appellant, and upon this statement the case was presented to the court below, and upon it do we form our opinion.

At the time Barraque, the first purchaser, entered upon the land in controversy, it was the subject of sale and entry under the laws of the United States. Barraque did all that the law required of him to entitle him to a patent, in the selection of the land and payment of the money to the receiver of the land office at Little Rock, and he, and those claiming under him, cannot be affected by the negligence or want of fidelity of the officers of the government. It was held, in *Moyer v. McCullough, 1 Ind., 343*, that when "the Register of the land office, in accordance with the law authorizing him to act in the premises, admitted the location to be made, and granted a certificate of the location, his authority for disposing of the land, thus legally located, was at an end. The land was no

longer in the market and the Register's subsequent sale of it, though to a person without notice, is not sustainable in a court of equity against the location."

So, also, in *Astrom et al., v. Hammond, 3 McLean's Reports, 107*, Justice McLean said, in regard to land thus situated: "Until the patent is issued the purchaser has not the legal title, but having made the entry of the land, and paid for it, the government can no more dispose of the land to another person than if the patent had been issued." An entry or survey for lands is an inchoate legal title, incomplete it may be; they will descend, may be devised, or aliened, and, as has been held by this court, vests such legal interest as enabled the purchaser to maintain ejectment.

In the United States courts it has been held that, where land has been bought and paid for, a certificate to that effect makes it as much the land of the purchaser as the patent itself. "Lands which have been sold by the United States can, in no sense, be called the property of the United States. They are no more the lands of the United States than lands patented."

In the case of *Reichart v. Phelps, 6 Wallace, 160*, the Supreme Court of the United States held that "patents by the United States for land, which it has previously granted, reserved from sale, or appropriated, are void." It is certain that in this case Barraque, having entered the land with a pre-emption warrant of the government, and the money paid to an agent of the government, duly authorized to receive it, the United States no longer held any right or title to grant to the State of Arkansas.

So, also, in *Stark v. Starrs, 6 Wallace, 402*, held that "the right to a patent once vested, is treated by the government, when dealing with the public lands, as equivalent to a patent issued." Can there be a doubt as to the lands in controversy, that a right to a patent vested in Barraque, when he located the land, and paid the government the full price she demanded in money? We think not.

It is insisted by the appellee that the patent is conclusive.

This is true, so far as it appropriates the land called for, and against rights subsequently acquired; but it has been judicially determined, in many cases, that when an equitable right, which originated before the date of the patent, whether by the first entry or otherwise, is asserted, it may be examined. *Bush v. Ware et al., 15 Peters 93*, and cases there cited.

The most that can be claimed for the title of the appellee is, that he holds the naked legal title in trust for the appellants; and it would be manifestly inequitable to oust the beneficiary holding a prior and more equitable title.

We cannot but conclude that the selection of the land by the State, and the issuance of a patent by the United States, was the result of a mistake, but from which the State of Arkansas, and the appellee claiming under her, take nothing—for, from the great length of time these lands were occupied notoriously by Barraque, and appellants under him, taxes must have been paid thereon, to the State, raises a very strong presumption, if not conclusive, that the State, as well as the appellee, had actual notice of the prior equities of the appellants.

There is one question of practice presented by the record, that we cannot pass without allusion. At the fall term, 1868, the appellee filed a motion to require the appellants to elect between their first plea (not guilty), and their fourth plea, being a special plea for possession, under color of title, etc., which was sustained by the court, and the appellants elected to stand on their fourth plea; whereupon the appellee demurred to the fourth plea, assigning that it was defective, double, etc., which was sustained by the court.

At the next term the appellants prayed to have their first plea reinstated, which was refused.

Without passing on the merits of the fourth plea, but conceding that, under the practice before the adoption of the Code, (whatever it may be now) the demurrer was rightly sustained, the court below erred in sustaining the motion requiring the appellants to elect between the first and fourth pleas. For it

is a well established rule that parties can only be required to elect between pleas presenting the same issues, *and both well plead.*

The judgment of the court below is reversed, and the cause remanded with instructions to permit the parties to further plead.

HARRISON, J., being disqualified, did not preside in this case.

HON. W. I. WARWICK, Special Judge.